**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOCEYLN RIVERA, JOHNATHEN JONES, and RYAN HARRIS, individually and on behalf of all similarly situated persons<br><br>Plaintiffs,<br><br>v.<br><br>W.D. WRIGHT CONTRACTING, LLC f/k/a W.D. WRIGHT CONTRACTING, INC., and WRIGHT OF PENNSYLVANIA, LLC,<br><br>Defendants. | JURY TRIAL DEMANDED<br><br>No. ____________ |

**COMPLAINT**

Plaintiffs, Joceyln Rivera ("Ms. Rivera"), Johnathen Jones ("Mr. Jones"), and Ryan Harris ("Mr. Harris") (collectively, "Plaintiffs"), by and through their counsel, Mobilio Wood, and Cohn Lifland Pearlman Herrmann & Knopf LLP, individually and on behalf of all others similarly situated, allege as follows:

**Introduction**

1. This lawsuit arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ("PMWA"), and Pennsylvania common law, as a result of the failure of defendants W.D. Wright Contracting, LLC f/k/a W.D. Wright Contracting,

Inc. ("Defendant Wright Contracting") and Wright of Pennsylvania, LLC ("Defendant Wright of PA") (collectively, "Defendants") to pay Plaintiffs, and other similarly situated employees who are members of the Collective and Class (defined herein), all earned wages.

2. Plaintiffs bring this action as: (i) a collective action pursuant to the FLSA; and (ii) a class action pursuant to Pennsylvania statutory and common law and Rule 23 of the Federal Rules of Civil Procedure, to recover unpaid straight-time and overtime wages.

3. Plaintiffs, as well as the Collective and Class members, are persons who perform or performed work for Defendants as traffic control technicians ("Flaggers"), traffic control supervisors ("Crew Leads"), and/or Drivers (defined herein).

4. At all times relevant and material herein, Defendants have employed Flaggers and Crew Leads to whom they assign company vehicles ("Drivers"), and who are employed for the specific purpose of driving the vehicles and transporting: (i) company-owned, job-related equipment and supplies; and (ii) other Flaggers and Crew Leads who are not Drivers, to and from Defendants' worksites.

5. As further described herein, transporting equipment, supplies, and other employees to and from Defendants' worksites is an integral, intrinsic, and

indispensable part of Drivers' principal activities, and is also compensable under the continuous workday rule.

6. Nevertheless, pursuant to Defendants' uniform policies and practices, Defendants do not compensate Drivers for time spent transporting company-owned equipment and/or other Flaggers or Crew Leads to and from Defendants' worksites, except to the extent that the travel time to or from the worksite exceeds one (1) hour.

7. Similarly, Defendants do not compensate Flaggers or Crew Leads for time spent traveling to and from Defendants' worksites in Drivers' vehicles, except to the extent the travel time to or from the worksite exceeds one (1) hour.

8. Thus, Plaintiffs allege, on behalf of the Collective and the Class, that they and other Drivers are owed wages from Defendants for time spent transporting equipment, supplies, and other Flaggers and Crew Leads to and from Defendants' worksites, for which time they were not compensated.

9. Plaintiffs additionally allege, on behalf of the Class only, that they and other Flaggers and Crew Leads are owed wages from Defendants for time spent traveling to and from Defendants' worksites in Drivers' vehicles, for which time they were not compensated.

10. As a result of the aforementioned pay practices, Plaintiffs and the members of the Collective and Class were and are illegally under-compensated for their work.

## Class and Collective Definitions

11. Plaintiffs bring this suit on behalf of the following similarly situated collective:

> All individuals employed or jointly employed by Defendant Wright Contracting as Drivers at any location outside of Indiana, at any time during the period beginning three (3) years before the filing of this Complaint up to and including the date of final judgment in this matter, who are named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 16(b) (the "Collective").

12. Plaintiffs also bring this suit on behalf of the following class of persons:

> All individuals employed or jointly employed by Defendant Wright Contracting and/or Defendant Wright of PA as Flaggers, Crew Leads, and/or Drivers at one or more of Defendants' Pennsylvania locations at any time during the period beginning four (4) years before the filing of this Complaint up to and including the date of final judgment in this matter (the "Class").

## Parties

13. Ms. Rivera is an adult individual and a citizen of the Commonwealth of Pennsylvania.

14. Ms. Rivera has consented in writing to be a plaintiff in this action and has executed a Consent to Join Collective Action form, a true and correct copy of which is attached hereto as **Exhibit "A"**.

15. Ms. Rivera was jointly employed by Defendants from in or around September 2023 through in or around November 2024 at Defendants' Wilkes-Barre, Pennsylvania location, and worked as a Flagger, Crew Lead, and Driver.

16. Mr. Harris is an adult individual and a citizen of the Commonwealth of Pennsylvania.

17. Mr. Harris has consented in writing to be a plaintiff in this action and has executed a Consent to Join Collective Action form, a true and correct copy of which is attached hereto as **Exhibit "B"**.

18. Mr. Harris was jointly employed by Defendants from in or around September 2019 through in or around August 2022 at Defendants' Quakertown, Pennsylvania location, and worked as a Flagger, Crew Lead, and Driver, and was jointly employed by Defendants from in or around August 2022 through January 2024 at Defendants' Wilkes-Barre, Pennsylvania location, and worked as a Crew Lead and Driver.

19. Mr. Jones is an adult individual and a citizen of the Commonwealth of Pennsylvania.

20. Mr. Jones has consented in writing to be a plaintiff in this action and has executed a Consent to Join Collective Action form, a true and correct copy of which is attached hereto as **Exhibit "C"**.

21. Mr. Jones has been jointly employed by Defendants from in or around April 2024 through the present at Defendants' Wilkes-Barre, Pennsylvania location, and has worked as a Flagger, Crew Lead, and Driver.

22. Defendant Wright Contracting is a Pennsylvania limited liability company headquartered at 1200 Sharon Road, Suite 1, Beaver, Pennsylvania 15009.

23. Defendant Wright of PA is a Pennsylvania limited liability company headquartered at 134 Glendale Road, Beaver Falls, Pennsylvania 15010, and is the nominal employer of individuals who perform work as Flaggers, Crew Leads, and Drivers at Defendants' Pennsylvania locations.

24. At all times relevant and material herein, Defendants have transacted business, including the employment of Plaintiffs and other Flaggers, Crew Leads, and Drivers, within the Commonwealth of Pennsylvania, including within this judicial district.

25. In engaging in the conduct alleged herein, Defendants acted in the course, scope of, and in furtherance of the aforementioned employment relationships.

**<u>Jurisdiction and Venue</u>**

26. This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*.

27. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

28. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, because acts or omissions giving rise to the claims of Plaintiffs alleged herein occurred within this judicial district, and Defendants regularly conduct business in, and have engaged in the wrongful conduct alleged herein, in this judicial district and, thus, are subject to personal jurisdiction in this judicial district.

## Factual Allegations

### A. Defendants' Uniform Operations and Joint Employment of the Class and Collective Members

29. Defendants are employers, joint employers, and/or "single employers" of Plaintiffs and the members of the Class and Collective.

30. At all material times, Defendants have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), performing related activities through unified operation and common control for a common business purpose. The wage violations alleged in this Complaint constitute part of Defendants' unified business model.

31. Defendants operate with a high degree of interrelated and unified operations and share common ownership and leadership.

32. Upon information and belief, Defendants share equipment, ownership, management (including, upon information and belief, Plaintiffs' supervisors and corporate officers), and collectively assert control over their employees.

33. Defendant Wright Contracting owns, operates, manages and/or controls approximately forty (40) locations across the Midwest, Mid-Atlantic, Carolinas, and Florida, including approximately seven (7) locations in Pennsylvania that are jointly operated with Defendant Wright of PA.

34. Upon information and belief, Defendant Wright Contracting exercises significant control over the terms and conditions of employment of the members of the Collective and Class.

35. Specifically, among other things, although Ms. Rivera was nominally employed by Defendant Wright of PA, her "Employee Profile," which was created by Defendants and made accessible through Defendants' intranet, referenced several "Organizational Managers," including "Harold P Gardner II."

36. As of the date of this filing, Mr. Gardner's public LinkedIn profile states that he has been a Regional Operations Manager with "WD Wright Contracting" from October 2022 through the present.

37. Moreover, upon information and belief, all of Defendant Wright Contracting's locations are operated under uniform policies and procedures

applicable to all members of the Collective and Class, including subjecting Flaggers, Crew Leads, and Drivers to the unlawful pay practices complained of herein.

38. Defendant Wright Contracting maintains a single website (www.wdwright.com) that incorporates all of the company's nationwide locations, where an individual can apply to work as a Flagger or Crew Lead at any location across the country.

39. Defendant Wright Contracting's website touts the "benefits," "holiday pay," "paid time off," and "advance opportunities" provided by the company, and encourages the prospective employees to "Apply at Wright!"

40. A separate section of Defendant Wright Contracting's website advertises the services offered to Defendant Wright's clients, and notes that "[o]ur employees work alongside your company."

41. Defendant Wright Contracting also advertises Flagger job positions at its locations throughout the country on various job search websites, which advertisements uniformly note, "WRIGHT is a family-owned and operated business devoted to its employees and customers for over 40 years. ***When you work with us you are not just 'one of our employees', you are part of the WRIGHT family***. We are committed to your personal and professional development." (emphasis added).

42. In addition, Defendant Wright Contracting maintains a public Facebook page, where it references its control over the company's nationwide locations.

43. For instance, a post on Defendant Wright Contracting's Facebook page commemorating the opening of a new location in Ohio states, "We've just opened our 3rd office in Columbus, OH."

44. Defendant Wright Contracting also conducts centralized leadership conferences and awards ceremonies for managers employed nationwide, as evidenced by an article posted by Defendant Wright Contracting on its public LinkedIn page, titled, "A round of applause for our great team!" The article notes that "[o]ur Operations Managers and members of our leadership team came together last month to celebrate their achievements at our annual company-wide Awards ceremony and conference!"

45. In turn, the public LinkedIn page of Mr. Gardner, who was listed in Ms. Rivera's "Employee Profile" as one of her "Organizational Managers," indicates that he "liked" the above-mentioned article posted by Defendant Wright Contracting.

46. A corresponding public Facebook post by Wright of North Carolina – the entity which, upon information and belief, nominally employs individuals who perform work at Defendants' North Carolina locations – similarly provides, "Last

month, our Operations Manager, Keith, represented our office during our annual company-wide conference and awards ceremony!"

47. Further, Defendants' Drivers are required to input their daily time into electronic timesheets bearing Defendant Wright Contracting's corporate logo, which timesheets are, upon information and belief, created, maintained by, and/or accessible to Defendant Wright Contracting.

48. Defendants are therefore jointly responsible for the employment practices complained of herein.

49. In the alternative, based on the foregoing, Defendants are liable pursuant to a "single employer" theory of liability, in that they are nominally independent, but in practice operate as one integrated enterprise.

**B. Duties and Responsibilities of Defendants' Flaggers, Crew Leads, and Drivers**

50. Defendants provide traffic control services, including traffic control devices, flagging, equipment rental, and traffic control design, at worksites in various locations across the United States.

51. Defendants employ Flaggers and Crew Leads, who are responsible for providing traffic control services at Defendants' worksites.

52. The job duties of Flaggers and Crew Leads include setting up and maintaining traffic warning signs, cones, and barriers, as well as holding up signs to direct the flow of traffic through worksites.

53. Flagging is a two-person job, and cannot be accomplished by a sole Flagger or Crew Lead.

54. For this reason, Defendants deploy Flaggers and Crew Leads in two-person crews, and prohibit Flaggers and Crew Leads from performing flagging duties alone.

55. Defendants also prohibit Flaggers and Crew Leads from driving their personal vehicles to Defendants' worksites.

56. Instead, Defendants employ certain Flaggers and Crew Leads as Drivers, who are assigned company-owned vehicles, and who are employed for the specific purpose of driving the vehicles and transporting: (i) company-owned, job-related equipment and supplies (including cones, signs, stands, hitches, and paperwork); and (ii) other Flaggers and Crew Leads who are not Drivers, to and from Defendants' worksites, in addition to providing traffic control services at the worksites.

57. In fact, following Ms. Rivera's promotion to a Driver, her electronic "Employee Profile" described above listed her job position as a "***Crew Lead-Driver***." (emphasis added).

58. Additionally, Defendant Wright Contracting's job advertisements for Flagger positions throughout Pennsylvania, Maryland, Ohio, Virginia, Kentucky, North Carolina, South Carolina, Florida, and Texas all state that a valid driver's

license and clean driving record are qualifications for the position, and further provide that one of the responsibilities of the position is to "***[d]rive the company vehicle to and from job sites in a safe manner***." (emphasis added).

59. Defendant Wright of PA's employee handbook likewise notes that "[a]ll company vehicle assignments are determined by management," and are based on "the need for drivers in a specific area."

60. The vehicles driven by Drivers weigh less than 10,000 pounds.

**C. Defendants' Unlawful Compensation Policies**

61. Defendants' Flaggers, Crew Leads, and Drivers, including Plaintiffs, regularly worked or work more than 40 hours per workweek.

62. Defendants' Flaggers, Crew Leads, and Drivers, including Plaintiffs, were and are hourly-paid, non-exempt employees under the FLSA and PMWA.

63. At all times relevant and material herein, Defendants have required Drivers to drive company-owned vehicles, containing job-related equipment and supplies, from Drivers' homes to and from Defendants' worksites.

64. Prior to arriving at Defendants' worksites each day, Drivers are also regularly required to drive their assigned vehicles from their homes to the homes of other Flaggers and Crew Leads, or to a designated meet-up point, pick up those employees, and transport those employees to Defendants' worksites.

65. While driving to Defendants' worksites, Flaggers, Crew Leads, and Drivers regularly field work-related phone calls and/or text messages from supervisors.

66. At all times relevant and material herein, at the end of each shift, Drivers have been required to drop off any Flaggers or Crew Leads who had been picked up earlier that day prior to returning to their own homes.

67. Drivers typically spend 30 minutes to 3 hours or more per day picking up, dropping off, and transporting other employees to and from Defendants' worksites.

68. Defendants' requirement that Drivers pick up, drop off, and transport other employees added additional drive time, and took Plaintiffs and other Drivers beyond their normal commute, when compared to a direct commute to a worksite.

69. Pursuant to Defendants' uniform policies and procedures, Defendants do not compensate Drivers for time spent transporting company-owned equipment and/or other Flaggers or Crew Leads to and from Defendants' worksites, except to the extent that the travel time to or from the worksite exceeds one (1) hour.

70. Similarly, pursuant to Defendants' uniform policies and procedures, Defendants do not compensate Flaggers or Crew Leads for time spent traveling to and from Defendants' worksites in Drivers' vehicles, except to the extent that the travel time to or from the worksite exceeds one (1) hour.

## Class and Collective Allegations

71. Plaintiffs bring this action on behalf of the Collective as a collective action pursuant to the FLSA, 29 U.S.C. §§ 207 and 216(b). The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

72. As described herein, Defendants regularly failed to compensate Drivers for all hours worked in excess of forty (40) hours per workweek.

73. Plaintiffs, having been employed by Defendants as Drivers, and subjected to the same pay policies and unlawful pay practices applicable to all Drivers, as set forth above, are similarly situated to the members of the Collective.

74. Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of themselves and the Class for claims under the PMWA and Pennsylvania common law. The claims brought pursuant to the PMWA and Pennsylvania common law may be pursued by all similarly situated persons who do not opt out of the Class pursuant to Fed. R. Civ. P. 23.

75. Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, as set forth above, Plaintiffs believe there are well over forty (40) individuals in the Class.

76. The claims of Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and the members of the Class worked for Defendants as Flaggers, Crew Leads, and Drivers, and were subject to the same compensation policies and practices, as set forth above.

77. Common questions of law and fact exist as to the Class that predominate over any questions affecting Class members individually and include, but are not limited to, the following:

(a) Whether Defendants have or had a uniform policy and/or practice of failing to pay Flaggers, Crew Leads, and Drivers for all hours worked;

(b) Whether Plaintiffs and the members of the Class were and are encouraged, expected, permitted, and/or required to work hours without proper compensation;

(c) Whether Defendants' conduct in failing to pay Flaggers, Crew Leads, and Drivers for all hours worked was and is willful;

(d) Whether Defendants have failed to pay Flaggers, Crew Leads, and Drivers overtime compensation for all hours worked in excess of 40 per workweek;

(e) Whether Plaintiffs and members of the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

(f) Whether Plaintiffs and members of the Class are entitled to restitution;

(g) Whether Plaintiffs and the members of the Class are entitled to liquidated damages; and

(h) Whether Defendants are liable for attorneys' fees and costs.

78. Plaintiffs will fairly and adequately protect the interests of the Class as their interests are in alignment with those of the members of the Class. Plaintiffs

have no interests adverse to the Class they seek to represent, and have retained competent and experienced counsel.

79. The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

80. Defendants have acted willfully and with a lack of good faith in their violations of the FLSA and PMWA.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT: OVERTIME WAGE VIOLATIONS (Plaintiffs and the Collective vs. Defendant Wright Contracting)

81. Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

82. At all relevant times, Defendant Wright Contracting has been an employer engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

83. Specifically, at all relevant times, Defendant Wright Contracting employed and/or continues to employ, employees "engaged in commerce or in the

production of goods for commerce" and "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

84. At all relevant times, Defendant Wright Contracting also has had annual gross volume of sales made or business done in excess of $500,000, within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii).

85. At all relevant times, Defendant Wright Contracting employed Plaintiffs and each of the Collective members within the meaning of the FLSA.

86. At all relevant times, Plaintiffs and members of the Collective were non-exempt employees under the FLSA and thus were entitled to be compensated at one-and-one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per workweek.

87. At all relevant times, Plaintiffs and members of the Collective regularly worked in excess of forty (40) hours per workweek.

88. Pursuant to Defendant Wright Contracting's policies and procedures, Defendant Wright Contracting willfully failed to pay overtime compensation to Drivers, including Plaintiffs, for time spent using company-owned vehicles to transport company-owned equipment and supplies and/or other Flaggers and Crew Leads to and from the company's worksites.

89. This unpaid work constituted Plaintiffs' and other Drivers' principal activities, and was an integral, intrinsic, and indispensable part of their other principal activities, was required by Defendant Wright Contracting, and was performed for Defendant Wright Contracting's benefit.

90. In addition, the time spent performing this unpaid work was and is compensable under the continuous workday rule, because it was work that occurred between the commencement of the first principal activity and the completion of the last principal activity each workday of Plaintiffs and other Drivers.

91. As a result of Defendant Wright Contracting's willful failure to compensate its employees, including Plaintiffs and members of the Collective, the appropriate overtime compensation for all hours worked in excess of forty (40) hours per workweek, Defendant Wright Contracting violated the FLSA, 29 U.S.C. § 201, *et seq*.

92. Defendant Wright Contracting's conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

93. Due to Defendant Wright Contracting's FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from Defendant Wright Contracting: compensation for unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT: OVERTIME WAGE VIOLATIONS (Plaintiffs and the Class vs. All Defendants)

94. Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

95. At all relevant times, Plaintiffs and members of the Class were non-exempt employees under the PMWA and thus were entitled to be compensated at one-and-one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per workweek.

96. At all relevant times, Plaintiffs and members of the Class regularly worked in excess of forty (40) hours per workweek.

97. Pursuant to Defendants' policies and procedures, Defendants willfully failed to pay overtime compensation to Drivers for time spent using company-owned vehicles to transport company-owned equipment and supplies and/or other Flaggers and Crew Leads to and from Defendants' worksites.

98. Pursuant to Defendants' uniform policies and procedures, Defendants willfully failed to compensate Flaggers and Crew Leads for time spent traveling to and from Defendants' worksites in Drivers' vehicles.

99. This uncompensated travel time occurred during Flaggers', Crew Leads', and Drivers' normal working hours.

100. As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Class, at the appropriate overtime wage rate, Defendants violated the PMWA, 43 P.S. § 333.101, *et seq.*

101. Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants the amount of unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

## COUNT III

## VIOLATION OF PENNSYLVANIA COMMON LAW: UNJUST ENRICHMENT (Plaintiffs and the Class vs. All Defendants)

102. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

103. Plaintiffs and the members of the Class were jointly employed by Defendants.

104. At all relevant times, Defendants maintained a willful policy and practice of failing to compensate Flaggers, Crew Leads, and Drivers for all hours worked per workweek, which resulted in Plaintiffs and other Flaggers, Crew Leads,

and Drivers being paid for less straight-time and overtime hours than they had worked.

105. Defendants retained the benefits of their failure to compensate Plaintiffs and other Flaggers, Crew Leads, and Drivers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

106. Defendants were unjustly enriched by failing to compensate Plaintiffs and other Flaggers, Crew Leads, and Drivers.

107. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the members of the Class suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiffs and the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Collective, respectfully request that this Court grant the following relief against Defendants:

A. Certification of this action as a collective action on behalf of the Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising the Collective members of the pendency of this action, and permitting the Collective members to assert timely FLSA claims in this action

by filing individual Consent to Join Collective Action forms pursuant to 29 U.S.C. § 216(b);

B. Certification of the action as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Class;

C. On the first claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

D. On the second claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiffs and the members of the Class;

E. On the third claim for relief, an award of reimbursement, restitution, and disgorgement from Defendants of wages improperly retained by Defendants to the Plaintiffs and the members of the Class;

F. An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class and Collective, pursuant to the FLSA and PMWA, respectively; and

G. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Date: 1/30/2025 BY: */s/ Peter C. Wood, Jr.*

Peter C. Wood, Jr., Esq. (ID No. 310145)
**MOBILIO WOOD**
900 Rutter Ave., Box 24
Forty Fort, PA 18704
Phone: (570) 234-0442
Fax: (570) 266-5402
peter@mobiliowood.com

Alex Pisarevsky, Esq. (NJ 029262008)
(Seeking admission *Pro Hac Vice*)
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Phone: (201) 845-9600
Fax: (201) 845-9423
ap@njlawfirm.com

*Co-Counsel for Plaintiffs*